## In re DATA GENERAL CORPORATION ANTITRUST LITIGATION.

### No. 369.

Judicial Panel on Multidistrict Litigation.

May 1, 1979.

---

Before MURRAY I. GURFEIN, Chairman, and EDWIN A. ROBSON, STANLEY A. WEIGEL, ANDREW A. CAFFREY, ROY W. HARPER, and CHARLES R. WEINER, Judges of the Panel.

## OPINION AND ORDER

PER CURIAM.

This litigation consists of six actions pending in three districts: three actions in the Northern District of California, two actions in the District of New Jersey, and one action in the Central District of California. Data General Corporation (Data General) is a party to each of the six actions.

One of the actions in New Jersey (the New Jersey antitrust action) was originally filed in August, 1978, in the District of Massachusetts and was recently transferred to the District of New Jersey pursuant to 28 U.S.C. § 1404(a). In this action, Data General is seeking a declaratory judgment against Ampex Corporation (Ampex). Data General states in the complaint that it manufactures minicomputers and microcomputers that are smaller and less expensive forms of general purpose digital computers. Data General markets a line of these small computers under the trademark "NOVA", along with related peripheral devices and related system software.[1] Data General further states that for a NOVA to function as a general purpose digital computer, it must consist of a central processing unit (CPU), main memory (or primary storage),[2] power supply, chassis and operating system software. Data General asserts that the CPU, main memory and operating system software constitute a single product which is commonly referred to as a computer.

Data General seeks a determination in the New Jersey antitrust action whether: 1) Data General's sale of NOVA minicomputers consisting of a CPU and a minimum amount of main memory constitutes an unlawful tying arrangement in violation of the federal antitrust laws; 2) Data General's licensing practices with respect to NOVA software, including Data General's policy of imposing little or no charge for its software license when a minimum amount of Data General computer equipment is purchased and Data General's policy prohibiting use of the licensed software on non-Data General products, constitute an illegal tying arrangement in violation of the federal antitrust laws; 3) Data General's marketing and licensing practices have created, in violation of the federal antitrust laws, an unreasonable restraint of trade in the sale of memory boards and other computer products; and 4) Data General made false and misleading statements about Ampex's financial soundness and integrity to potential purchasers of Ampex's products.

The other New Jersey action (the New Jersey trade secrets action), filed in March, 1977, was also brought by Data General against Ampex. Data General alleges that Ampex has wrongfully used Data General's memory unit trade secrets which Data General had disclosed to Ampex in order to allow Ampex to manufacture memory units for Data General. More specifically, Data General charges that Ampex unlawfully disclosed the subject matter of Data General's trade secrets to a third party competitor of Data General for the purpose of allowing Ampex and the third party competitor to compete unfairly with Data General.

---

1. Data General states in its complaint that its software is specially designed as a fundamental set of instructions basic to the operation of Data General's computer for any practical application.

2. Data General explains in its complaint that main memory (which consists of one or more memory boards composed of electromagnetic and/or electronic components mounted on a printed circuit) stores the operating system, as well as the application programs and data actually being processed by the CPU, during the data processing cycle.

The first of the three actions in the Northern District of California was brought in June, 1978, by Digidyne Corporation (Digidyne) against Data General, Data General's president and various unnamed defendants. Digidyne alleges that Data General maliciously and slanderously stated to Ampex and other Digidyne customers that Digidyne had used trade secrets and proprietary information of Data General in connection with the design and manufacture of a Digidyne computer. Digidyne subsequently amended its complaint to allege that: 1) Data General had illegally tied purchase of its software with purchase of a CPU in violation of the federal antitrust laws; and 2) Data General had attempted to monopolize the business of manufacturing NOVA-compatible computers by means of abuse of copyright laws and licensing agreements and by threats of lawsuits to potential purchasers of NOVA-compatible computers.

The second action in the Northern District of California was filed by SCI Systems, Inc. (SCI) against Data General in October, 1978. SCI claims that Data General's practice of licensing its software only for use with NOVA computers, and Data General's alleged practice of intentionally designing and marketing NOVA computers and NOVA software in such a manner that it is technologically and financially impracticable for Data General's customers to design their own software, constitute unlawful tying arrangements in violation of the federal antitrust laws. SCI also alleges that Data General has engaged in a systematic program of harassing manufacturers of NOVA-compatible computers for the purpose of restraining competition by bringing groundless actions against other manufacturers, including SCI, for misappropriating trade secrets and for breaching and inducing breach of Data General licenses. Finally, SCI charges that Data General, in acquiring the assets of another computer manufacturer, has monopolized or attempted to monopolize the NOVA-compatible computer market.

The third Northern District of California action was filed by Fairchild Camera and Instrument Corporation (Fairchild) against Data General in October, 1978. Fairchild alleges that Data General's software licensing agreements constitute illegal tying arrangements under the federal antitrust laws, and that Data General has attempted to eliminate competition from Fairchild and other manufacturers in the market for NOVA-compatible computers by means of abuse of copyright laws and licensing agreements and by litigation and threats of litigation to manufacturers of NOVA-compatible computers and to the manufacturers' potential customers.

The three Northern District of California actions have been consolidated by the district court for the purpose of pretrial discovery proceedings.

The Central District of California action was brought in October, 1978, by Bytronix Corporation (Bytronix) against Data General. Bytronix alleges that 1) Data General has restrained competition in the market for minicomputer CPU's by asserting that manufacturers of NOVA-compatible CPU's are violating Data General's trade secrets; 2) Data General's software licensing agreements constitute illegal tying arrangements under the federal antitrust laws; 3) Data General's marketing policies and practices have unreasonably restrained trade in the sale of CPU's; and 4) Data General is violating the California Business and Professions Code by greatly reducing the price of Data General's licenses to purchasers of its other equipment and by providing less than adequate service to equipment Data General sells if that equipment is used in connection with equipment sold by Data General's competitors.

Pursuant to 28 U.S.C. § 1407, Data General moves the Panel to transfer the four California actions [3] and the New Jersey an-

---

3. Although there was some ambiguity in Data General's motion as to whether the non-antitrust claims in the *Digidyne* action in the Northern District of California were included in the motion, that ambiguity becomes academic in light of our decision to centralize the actions in this docket in that district and the attendant

titrust action to the District of Massachusetts for coordinated or consolidated pretrial proceedings. Bytronix, SCI and Fairchild do not oppose centralization under Section 1407, but they do oppose selection of the District of Massachusetts as the transferee forum. SCI and Fairchild support selection of the Northern District of California as the transferee forum, and Bytronix favors either that district or the Central District of California. Ampex and Digidyne oppose transfer. If the Panel orders centralization under Section 1407, however, Ampex and Digidyne both support selection of the Northern District of California as the transferee forum. Also, in the event of transfer, Ampex favors inclusion of the New Jersey trade secrets action in the Section 1407 proceedings.[4] Data General opposes inclusion of that action.

We find that these six actions raise common questions of fact and that transfer under Section 1407 to the Northern District of California will best serve the convenience of the parties and witnesses and promote the just and efficient conduct of the litigation.

Ampex and Digidyne deny that the four California actions and the two New Jersey actions share any common questions of fact that are sufficiently complex or time-consuming to warrant transfer under Section 1407. These opponents argue that the products, technology and market at issue in the California actions involve CPU's and are different from the products, technology and market in the New Jersey actions, which primarily involve memory units. These opponents urge that voluntary cooperation among the parties, counsel and courts is preferable to transfer under Section 1407. Data General maintains that the New Jersey trade secrets action involves factual questions which are distinct from those in the other actions in this docket, and that therefore the New Jersey trade secrets

action should be excluded from any centralized pretrial proceedings ordered by the Panel.

We are unpersuaded by these contentions. The California actions and the New Jersey antitrust action all share questions of fact concerning the following: Data General's marketing of the computer equipment Data General manufactures, including Data General's licensing of software Data General has developed; the computer market; Data General's economic power in the computer market; and whether Data General's marketing and licensing practices have unreasonably restrained trade in the sale of computers. This commonality of factual questions springs from the reality that Ampex, Bytronix, Digidyne, Fairchild and SCI all market Data General compatible devices which depend for their success upon their ability to function technologically with Data General equipment at an economically competitive price. Any difference in the particular product involved in each action does not negate this commonality. Transfer under Section 1407 is thus necessary in order to prevent duplication of discovery, avoid inconsistent pretrial rulings, and economize judicial effort. *See, e. g., In re IBM Peripheral EDP Devices Antitrust Litigation*, 394 F.Supp. 796, 797 (Jud.Pan.Mult. Lit.1975).

We find that the New Jersey trade secrets action should also be included in the centralized pretrial proceedings in this docket. An understanding of complicated principles of computer technology will be necessary in both the trade secrets action and the antitrust actions. Furthermore, the type of conduct evidenced by Data General in asserting its trade secrets claim in the New Jersey action is itself at issue in several of the antitrust actions wherein plaintiffs are asserting that Data General's litigative strategy is an element of a general scheme of illegal anticompetitive activity.

reality that those claims will be pending before the transferee court in any event.

4. We have considered the New Jersey trade secrets action for inclusion in our present transfer order because all parties in that action

have presented written and oral argument on whether that action should be included in our transfer order. Thus, the requirements of Rule 13(b), R.P.J.P.M.L., 78 F.R.D. 561, 571 (1978), have been satisfied.

The validity of Data General's trade secret claims may therefore be litigated in the antitrust actions and the trade secrets actions, and transfer under Section 1407 will help to avoid the duplicative discovery, inconsistent pretrial rulings, and waste of judicial effort which otherwise might occur. Of course, the degree of coordination between the antitrust actions and the trade secrets action is left to the discretion of the transferee judge. And any discovery unique to a particular action can be scheduled by the transferee judge to proceed concurrently with the common discovery, thereby permitting the litigation to proceed expeditiously in all areas. *See In re Swine Flue Immunization Products Liability Litigation,* 446 F.Supp. 244, 247 (Jud.Pan.Mult. Lit.1978).

Moreover, while voluntary cooperation among parties and counsel is always commendable, the record before us demonstrates that such cooperation can best be achieved by placing the actions in this docket under the supervision of a single judge.

Data General urges that the District of Massachusetts be selected as the transferee forum for this litigation because relevant documents and witnesses, pertaining to discovery of both technical and business matters at issue in these actions, will be found at Data General's headquarters and research facilities located in that district.

On balance, we find that the Northern District of California is the preferable transferee forum. Three of the six actions in this docket are already pending there, whereas none is pending in the District of Massachusetts. More importantly, the Honorable William H. Orrick, Jr., to whom those three actions are presently assigned, has had an opportunity to become familiar with the legal and technical questions in this litigation, and is therefore in the best position to supervise the pretrial proceedings in this litigation to their just and expeditious termination. *See In re Griseofulvin Antitrust Litigation,* 395 F.Supp. 1402, 1403 (Jud.Pan.Mult.Lit.1975). We note also that the Northern District of California is the choice of five of the six parties to this litigation. *See In re Sugar Industry Antitrust Litigation,* 395 F.Supp. 1271, 1274 (Jud.Pan.Mult.Lit.1975).

IT IS THEREFORE ORDERED that, pursuant to 28 U.S.C. § 1407, all actions listed on the following Schedule A and pending in districts other than the Northern District of California be, and the same hereby are, transferred to that district and, with the consent of that court, assigned to the Honorable William H. Orrick, Jr., for coordinated or consolidated pretrial proceedings with the actions listed on Schedule A and pending there.

SCHEDULE A

**Central District of California**

| | |
|---|---|
| Bytronix Corp. v. Data General Corp. | Civil Action No. 78–3832–RF(Px) |

**Northern District of California**

| | |
|---|---|
| Digidyne Corp. v. Data General Corp. | Civil Action No. C–78–1261–WHO |
| SCI Systems, Inc. v. Data General Corp. | Civil Action No. C–78–2417–WHO |
| Fairchild Camera and Instrument Corp. v. Data General Corp. | Civil Action No. C–78–2418–WHO |

**District of New Jersey**

| | |
|---|---|
| Data General Corp. v. Ampex Corp. | Civil Action No. 77–0636 |
| Data General Corp. v. Ampex Corp. | Civil Action No. 79–1247 |