**In re AD VALOREM TAX LITIGATION.**

**No. 07–0009.**

Texas Judicial Panel on Multidistrict Litigation.

Heard May 17, 2007.

Decided June 26, 2007.

*On Review By The Multidistrict Litigation Panel*

Justice DOUGLAS S. LANG delivered the unanimous opinion of the Multidistrict Litigation Panel, in which Justice GEORGE C. HANKS, JR., Justice CATHERINE STONE, Justice ANN CRAWFORD McCLURE, and Justice JANE BLAND joined.[1]

**I. Motion to Transfer**

This is the second motion to transfer filed by Valero Energy Corporation respecting its ad valorum tax litigation against thirty-nine different tax appraisal districts across the State of Texas. We denied Valero's first motion to transfer by our opinion of April 19, 2006 (*Valero I*).[2] In these cases, Valero challenges the Appraisal Districts' valuation of its refineries, pipelines, terminals, and convenience stores, together with the inventory, furniture, fixtures, and equipment related to those assets.

**II. Factual and Procedural Context**

The record supplied to us for consideration of this motion is not detailed. With a

---

1. Justice David Peeples not sitting. In accordance with Texas Government Code section 74.161 and Rule 13.2(a) of the Texas Rules of Judicial Administration, Chief Justice Wallace Jefferson assigned Justice Jane Bland, Court of Appeals, First District, to serve on this matter.

2. The first action was filed on February 6, 2006 and was decided by this Panel in an opinion delivered on April 16, 2006. *In re Ad Valorem Tax Litigation,* 216 S.W.3d 83 (Tex. Jud. MDL Panel 2006)(hereinafter *"Valero I"*).

few exceptions, Valero and the Districts have not provided us with facts identifying how many parcels of real estate, convenience stores with their attendant personalty, or other facilities of Valero are involved in these suits or what property is involved in any particular suit. While we are not advised how many cases involve refineries, pipelines, and terminals, the record reflects that one of the property valuations at issue is a coker unit in Valero's Texas City, Galveston County refinery. We presume that refinery's asset value is at issue as well. As to the convenience stores or "c-stores" across the state which are the subjects of litigation, we are not advised how many such facilities are to be addressed in the cases pending across the state. Two Appraisal Districts have identified "c-store" properties that are the subject of a valuation dispute. The Hidalgo County Appraisal District advises the values of " 'c-stores' and the personal property associated therewith located at not less than 17 different locations" in Hidalgo

County are in dispute. The Dallas Central Appraisal District describes generally that all three of Valero's law suits pending in Dallas County deal with real estate and personal property at an unspecified number of convenience stores. We presume Valero convenience stores, the real estate where each is situated and the attendant inventory, fixtures, and equipment, are, at least in part, the subject of virtually every suit Valero seeks to transfer. Finally, we are advised by Valero that the legal claims it specifically asserts in its cases are that its properties have been appraised above market value and unequally with respect to comparable properties. Tex. Tax Code Ann. § 42.24 (Vernon 2001).

*Valero I* involved 150 lawsuits in eighty-five district courts in forty-two counties with forty-two appraisal districts. This current case, *Valero II*, when filed, involved 125 cases[3] in eighty-five district courts in thirty-nine counties with thirty-nine appraisal districts.[4]

3. We are not advised by the parties whether all of the 125 cases which are the subject of the second case, *Valero II*, were included within the 150 cases which were the subject of *Valero I*, or whether some of the 125 cases have been filed subsequent to our April 19, 2006 opinion in *Valero I*. However, although not specifically advised by the parties, we presume the subject matter and issues are the same for all 125 cases whether filed before or after our 2006 opinion. By the time of oral submission of *Valero II*, on May 17, 2007, we were advised "numerous cases subject to the motion" had settled with Bexar Appraisal District, Denton Central Appraisal District, El Paso Central Appraisal District, Lubbock Central Appraisal District, and Tarrant Appraisal District. It is unclear if these cases have been dismissed. The number of cases pending at this time is not precisely clear, but we assume the number is substantially the same as when this motion was filed.

4. The appraisal districts named as defendants in the cases which are the subject of this motion are: Bee County Appraisal District, Bell County Appraisal District, Bexar County Appraisal District, Brazoria County Appraisal District, Brazos County Appraisal District, Caldwell County Appraisal District, Calhoun County Appraisal District, Cameron County Appraisal District, Colorado County Appraisal District, Dallas Central Appraisal District, El Paso Central Appraisal District, Ellis County Appraisal District, Galveston County Appraisal District, Gillespie Central Appraisal District, Grayson County Appraisal District, Guadalupe County Appraisal District, Harris County Appraisal District, Hidalgo County Appraisal District, Jefferson County Appraisal District, Jim Wells County Appraisal District, Kaufman County Appraisal District, Kendall County Appraisal District, Kerr Central Appraisal District, Liberty County Central Appraisal District, Lubbock County Appraisal District, McClennan County Appraisal District, Moore County Appraisal District, Orange County Appraisal District, Rockwall Central Appraisal District, San Jacinto County Appraisal District, Travis Central Appraisal District, Trinity County Appraisal District, Victoria County Appraisal District, Waller County Appraisal District, and Williamson County Appraisal District.

In *Valero I*, we denied Valero's motion to transfer, concluding that under Rule 13, Texas Rules of Judicial Administration, Valero had "... not shown that these cases are related or that it would serve the convenience of the litigants, witnesses, or lawyers to have the pretrial issues heard by one judge." [5] Valero did not seek review of that decision pursuant to rule 13.9(a). Valero now contends our first decision was in error based upon the contentions we address below. Also, Valero argues our decision is contrary to the case law from the federal courts interpreting the federal multi-district litigation statute, 28 U.S.C. Section 1407.[6] According to Valero, the Texas multi-district litigation law was modeled after the federal multi-district litigation scheme and we should follow the lead of the federal cases as to whether the cases Valero seeks to transfer are "related." Further, although not agreeing with our reasoning in *Valero I* as to whether the transfer of the cases "would serve the convenience of the litigants, witnesses, or lawyers," Valero contends that the circumstances have changed in that conflicting evidentiary and discovery rulings have transpired since our ruling in *Valero I*. Based upon these and other contentions discussed below, Valero argues we should reverse our conclusion in *Valero I* and decide in Valero's favor in this case, *Valero II*.

We cannot agree with the arguments of Valero. Accordingly, we deny Valero's motion to transfer and decline to appoint a pretrial judge pursuant to rule 13.3. We have evaluated our decision in *Valero I* in light of Valero's arguments as to the facts and the law and the contention of changed circumstances. We conclude Valero has not shown that these cases are sufficiently "related," or that it would serve the convenience of the litigants, witnesses, or lawyers to have the pretrial issues heard by a single pretrial judge.

## III. Are the cases related?

Under rule 13.2(f), cases are "related" if they involve "one or more common issues of fact." *See* Tex. R.Jud Admin. 13.2(f); Tex. Gov't Code Ann § 74.162 (Vernon 2005). Valero asserts the over arching common issue of fact, which leads to the conclusion the cases are "related," is the "valuation" of the various properties which Valero and the Districts must try in the district courts. Further, Valero contends that by demonstrating "valuation" is a common issue of fact in these cases, especially the valuation of convenience store inventory, it has met its burden on this motion to transfer because it need only show that there are "one or more common questions of fact."

Valero describes the "valuation" issue as it relates to the several types of property which are the subject of the lawsuits. It tells us that "numerous items of Valero's personal property are common to Valero's convenience stores (among other facilities)." In fact, as to personal property valuation, Valero contends this court has "... recognized ... these cases involve the valuation of numerous common items, including the inventory of Valero's convenience stores ...," citing us to *In re Ad Valorem Tax Litig.*, 216 S.W.3d 83 (Tex. Jud. MDL Panel 2006). At the same time, Valero acknowledges that "there may not

---

**5.** *In re Ad Valorem Tax Litigation,* 216 S.W.3d at 84.

**6.** *See In re Asbestos Products Liability Litig. (No. VI),* 771 F.Supp. 415 (J.P. M.L.1991); *In re Gen. Motors Class E Stock Buyout Sec.* *Litig.,* 696 F.Supp. 1546 (J.P. M.L.1988); *In re Data Gen. Corp. Antitrust Litig.,* 470 F.Supp. 855 (J.P. M.L.1979). These cases were cited to us at the time of oral submission on May 17, 2007.

be" common issues with respect to the value of the real estate on which the convenience stores are located. In oral submission, Valero recognizes, as it must, that parcels of real estate are "unique." Additionally, Valero contends that valuation of its pipelines, refineries, and terminals also involve common questions of fact because those facilities, in particular, refineries, include spare parts, vehicles, vessels, small tanks, and computer equipment, often purchased in bulk and distributed to several locations. We are also advised that pipeline construction costs are incurred on a system-wide basis that crosses county lines. These costs are "allocated" by system regardless of county, and are used by appraisers in developing cost, income, and market approaches to valuation. Likewise, some refinery equipment, such as manual controls, "have similar functional obsolescence for deduction purposes."

Valero's arguments in *Valero II* are somewhat different from those it developed in *Valero I*.[7] Valero now concedes there may be an absence of common issues of fact respecting valuation of real estate parcels. We note that although Valero focuses in its reply in this case upon its contention that a common issue exists relative to valuation of personalty, while recognizing the unique nature of real estate valuation, Valero does not suggest the scope of the matters to be addressed and coordinated by the pretrial court should be limited to those related to personal property valuation.

Many of the respondent Districts filed separate responses to the motion to transfer. However, the Districts appear to be aligned in their positions. We glean from their briefing the following major points: (1) Valero has not met its burden in showing one or more common issues of fact because the sole issue raised, "valuation," is the ultimate issue in each case of the appraised value of the property, in each location; (2) the assertion of a common fact issue as to inventory does not withstand scrutiny because: a) the amount and type of inventory in each store is unlikely to be the same as to any store due to location and physical differences, b) it will be difficult to consider the value of the inventory separately from the value of the real property, both for the subjects and for any comparable sales utilized by the appraisers, and c) the fact that issues may be similar in some cases does not warrant transfer when the vast majority of the cases involve individualized inquiries; (3) contrary to the assertion of Valero, these cases are significantly different from the cases transferred in *In re Silica Products* because there, the underlying suits shared a common fact issue: whether and to what extent the plaintiffs were injured by silica, whereas here, the issue in the underlying local case is different from the issue in each other case, i.e., to determine the "correct" value of each property,[8] thus, "individualized issues" predominate; (4) this motion is an attempt to create a statewide center for ad valorum tax appeals which violates Article VIII, Section 23 of the

---

7. In *Valero I*, Valero made three principle arguments to support its contention that 85 cases were "related" within the meaning of rule 13:(1) the appraisal districts used a mass appraisal process that did not independently appraise the properties and "[did] not take into account all relevant factors and indicators of market value;" (2) the items of property being appraised were common and of the

same kind and therefore should be valued uniformly; (3) the cases involved the same provisions of the tax code, which should be applied and interpreted uniformly across the state. *In re Ad Valorem Tax Litig.*, 216 S.W.3d at 84.

8. *In re Silica Products Liability Litig.*, 166 S.W.3d 3 (Tex. Jud. MDL Panel 2004).

Texas Constitution which requires, in part, that "Administrative and judicial enforcement of uniform standards and procedures for appraisal property for ad valorem tax purposes, as prescribed by general law, shall originate in the county where the tax is imposed...." Further, the legislation which implements that constitutional mandate requires, in part, that, "The district court shall try all issues of fact and law raised by the pleadings in the manner applicable to civil suits generally." sec. 42.23(a) Tex. Tax Code., (5) Were this motion granted, it would breed untold numbers of "MDL cases" involving owners of property in multiple appraisal districts seeking to transfer tax appraisal suits to a "central tax court," frustrating the ad valorum tax appraisal system in violation of Article VIII, Section 23, of the Texas Constitution; (6) Valero is barred from revisiting the issue of whether the cases are "related" because the opinion in *Valero I*, which concluded the cases were not "related," is the law of the case; and (7) The example of the litigation in Galveston County over the valuation of the Galveston County coker unit demonstrates the inherently local nature of the "valuation" issue. Valuation of the coker unit turns on age, location, performance, economies of scale in the district, and according to Valero's contention of unequal treatment, the appraisal of another local coker unit must be scrutinized. These issues have nothing in common with the convenience store issues.

■ First, we address the proposition that there may be common issues of fact as to valuation of real estate in these cases. Important to our conclusion is that Valero acknowledges, as to the valuation of real property, "there may not be" common issues of fact. We agree and thus reaffirm our conclusion in *Valero I* that, "[c]oncerning the similarity, or commonness, of the properties in the ... different counties, we

do not accept the suggestion that the real property and improvements situated in different counties are necessarily similar." *In re Ad Valorem Tax Litig.*, 216 S.W.3d at 85.

Second, we address arguments raised as to the issue of valuation of personal property. In this regard, we cannot agree with Valero's reading of our opinion in *Valero I*. Valero appears to contend we effectively decided that there are common issues of fact as to inventory valuation. In support of that contention, we are cited to the following language, "It is no doubt true that the inventory at some convenience stores, in contrast to realty, may have a somewhat uniform value in different parts of the state...." *Id.* at 85. However, Valero's argument fails to fully quote our statement. Rather, the complete context of our conclusion, including an important qualifying clause, is, "It is no doubt true that the inventory at some convenience stores, in contrast to the reality, may have a somewhat uniform value in different parts of the state, *but we think that does not convert these cases into related cases.*" (emphasis added) *Id.* at 85. Considering the arguments and contentions in the record before us in this case, we reaffirm that conclusion from *Valero I* in this case.

Third, we consider Valero's contention that we should conclude the cases before us are "related" based upon our decision that the cases in the *Silica Products* matter were "related." *See In re Silica Products*, 166 S.W.3d at 3. We do not agree. Rather, the cases in *Silica Products* are distinguishable from those now before us. In *Silica Products*, the underlying suits shared a common fact issue: whether and to what extent the plaintiffs were injured by silica, whereas here, the issue in the underlying local case is different from the issue in each other case, *i.e.,* to determine

the "correct" value of each individual and separate property.

Finally, we do not agree with Valero that federal case law compels us to conclude "valuation" is a common issue of fact, hence these cases are "related." While the commentators, Wright and Miller and Moore, conclude the "related" case test is liberally interpreted by the federal courts, we cannot read the case law from the federal courts to describe such a liberal standard as would dictate the granting of this motion to transfer.[9]

The cases cited to us by Valero at oral submission, *In re Asbestos Products Litigation, In re General Motors Class E Stock Buyout Securities Litigation,* and *In re Data General Corp. Antitrust Litigation,* address fact situations and issues that stand in sharp contrast to the cases Valero seeks to transfer in this proceeding. *See In re Asbestos Products Liability Litig. (No. VI),* 771 F.Supp. 415 (J.P. M.L. 1991); *In re Gen. Motors Class E Stock Buyout Sec. Litig.,* 696 F.Supp. 1546 (J.P. M.L.1988); *In re Data Gen. Corp. Antitrust Litig.,* 470 F.Supp. 855 (J.P. M.L. 1979). The *Asbestos* case involves a commonality of causation regarding exposure to a single toxic substance. *See In re Asbestos,* 771 F.Supp. at 415. The *General Motors* case involves commonality in that the same corporate transactions form the basis for the factual allegations in two cases. *See In re Gen. Motors,* 696 F.Supp. at 1546. The *Data General panel* concluded there was commonality in the defendant's marketing of computer equipment and licensing software, the computer market, the defendant's "economic power," and whether certain practices were unreasonable restraints of trade because those questions "spring from the reality" that the plaintiffs depend for their economic success on being able to purchase defendant's equipment "at an economically competitive price." *See In re Data Gen.,* 470 F.Supp. at 855. In contrast, Valero's cases against the Districts involve specific inquiries into the valuation of separate and distinct properties, of varying type, in the local districts where the properties are situated.

Moreover, when we cast a broader net to research the federal cases, we determine federal panels have, not infrequently, declined to grant motions to transfer. Similar to this case before us, some federal panels have determined the issues cited by the movant as being "common issues of fact," were, upon careful analysis, "local in nature," the cases were only "peripherally related," or some of the suits alleged to be "related cases" actually involved "unique questions of fact" which predominated over common ones. *See e.g. In re Trucking Indus. Employment Practices Litig.,* 384 F.Supp. 614, 615–16 (J.P.M.L.1974)(denying transfer for various actions in employment discrimination suits against trucking industry because unique questions of fact involving specific discriminatory acts were "entirely local in nature"); *In re Air Crash Disaster Near Natchitoches Parish, Louisiana, on Sept.20, 1973,* 391 F.Supp. 765, 766 (J.P.M.L.1975)(denying transfer because cause of action only "peripherally related" to other actions); *In re United Gas Pipe Line Co. Litig.,* 391 F.Supp. 774 (J.P.M.L.1975)(denying transfer in various breach of contract actions because unique questions of fact existed concerning the individual relationships of customers to pipeline corporation); *In re The Boeing Co. Employment Practices Litig. (No. II),*

---

9. *See* 15 CHARLES ALAN WRIGHT, ARTHUR R. MILLER & EDWARD H. COOPER, FEDERAL PRACTICE AND PROCEDURE: JURISDICTION 3d § 3863, 381 fn8 (Thomson/West 2007); 17 MOORE'S FEDERAL PRACTICE, § 112.04(1) (Matthew Bender 3d. ed.2006).

293 F.Supp.2d 1382 (J.P. M.L.2003)(denying transfer because unique questions of fact relating to individual conditions of employment predominated over any common questions of fact relating to company wide racial discrimination allegations). The federal cases persuade us that the cases which are the subject of this motion are not "related."

We concluded in *Valero I,* and we conclude now, on this record, "[t]he valuation of property, certainly the major kinds of property at issue here, is an inherently individualized and local process. Valero admits this, as it must, when it says 'the determination of each individual Property's appraised value ultimately will turn on the characteristics specific to that Property.' " [10] *Id.* at 85. Having concluded the cases are not "related," we need not address the constitutional and tax code arguments of the parties.

## IV. Would transfer further convenience and efficiency?

Valero contends transfer would serve the goals of convenience and efficiency for several reasons. First, Valero advises it has experienced inconsistent *Daubert–Robinson* rulings regarding its expert witness as to the valuation of personal property.[11] We are told generally, that Mr. Connelly, Valero's personal property valuation expert, was presented as a trial witness in four Harris County cases over the objection of the District. Then, according to Valero, the expert's testimony was struck in two of these cases after verdict, when the trial court granted a motion for judgment notwithstanding the verdict. According to Valero, the District attacked both the methodology and supporting data underlying Mr. Connelly's expert opinions. Valero has retained this same expert for numerous cases across the state. Valero reminds us of our statement in our opinion in *Valero I* as to expert opinion issues. We said,

"Valero argues that the forty-two (or more)[7] different judges exercising their discretion differently may produce conflicting *Daubert–Robinson* rulings, even though the same witnesses and the same issues are involved. This is certainly a possibility, and if it happens we would agree that rule 13's goals would be implicated. But on these facts that prospect is too remote and implausible to override the overwhelmingly local nature of these cases."[12] *In re Ad Valorem Tax Litigation,* 216 S.W.3d at 86.

**10.** "In this sense, property appraisal is unlike the design, manufacture, and marketing of automobile tires and products containing asbestos and silica, which have been involved in some of our previous MDL proceedings. *See In re Firestone/Ford Litig.,* 166 S.W.3d 2 (Tex. Jud. MDL Panel 2004)(tires); *In re Silica Products Liability Litig.,* 166 S.W.3d 3 (Tex. Jud. MDL Panel 2004)(silica); *Union Carbide v. Adams,* 166 S.W.3d 1 (Tex. Jud. MDL Panel 2003)(asbestos). Valero's case also differs from these earlier cases in that the MDL movant is Valero, which has filed eighty-five lawsuits against forty-two local appraisal boards concerning property situated in forty-two counties. We realize that Valero had no choice about bringing suit in the counties where the property is located. Nevertheless, as the plaintiff in forty-two different venues,

Valero is not in the same situation as were the tire, silica, and asbestos defendants who sought MDL treatment when they were sued by multiple plaintiffs in multiple counties." *In re Ad Valorem Tax Litig.,* 216 S.W.3d at 87 fn4.

**11.** *See Daubert v. Merrell Dow Pharms., Inc.,* 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993); *E.I. du Pont de Nemours & Co., Inc. v. Robinson,* 923 S.W.2d 549 (Tex.1995).

**12.** Footnote 7 in *Valero I* states: "As mentioned, there are 150 Valero cases pending before eighty-five district courts in forty-two counties. At this point it is not clear how many of these will be consolidated before one judge per county pursuant to local proce-

Second, without elaborating about the specific facts and issues involved, Valero advises us that there have been two other non-expert discovery disputes which have necessitated the filing of two petitions for writs of mandamus.[13] Valero tells us that in a Galveston County suit, the District propounded document requests pertaining to properties not at issue in the particular suit, to future capital expenditures, and for all operational permits and employee manuals. Valero objected, the trial court overruled some or all of the objections, and mandamus was sought. In Moore County, Valero was ordered to produce documents.[14] Based upon these episodes, Valero argues that its concerns about inconsistent and multiple discovery skirmishes are no longer hypothetical and we should act to transfer the cases to effect "uniform and consistent treatment" under rule 13. *See In re Silica*, 166 S.W.3d at 5.

Third, Valero again asserts that "... these cases involve the valuation of numerous common items, including the inventory of Valero's convenience stores." Valero suggests, "... Rule 13's goal of efficiency will be furthered where, as here, a single pretrial judge can 'give individual consideration to case-specific issues, while giving consistent, uniform treatment to the common and recurring issues,' such as the valuation of numerous items of Valero's personal property *(e.g.,* inventory, furniture, fixtures, and equipment) that, as the panel has already recognized, are common to Valero's convenience stores among other facilities. *See In re Ad Valorem Tax Litigation* [ ... 216 S.W.3d at 85]." Valero says, "Implicit in the relatedness requirement is the idea that it is more efficient to conduct pretrial proceedings on common issues in one forum." Additionally, Valero asserts discovery propounded by the Districts, especially as to inventory, is repetitive.

Fourth, while acknowledging that the uniform scheduling of the deposition of its experts will primarily convenience Valero, Valero suggests the Districts will not be inconvenienced by transfer. Valero asserts that twenty-seven of the thirty-nine Districts are represented by counsel located in Austin, so transfer to Travis County would appear to be more convenient "on the whole." The experts for the Districts "do not generally reside in the local counties." For instance, Harris County's expert is from North Carolina and Bexar County's expert resides in Harris County. Further, "one would not expect" the local officials to attend the pretrial proceedings because, "on information and belief," Valero asserts the local officials "only rarely attend" such hearings. Any inconvenience can be "ameliorated by appointment of liaison counsel to take the lead for aligned parties on common matters." According to Valero, statewide coordination will promote conservation of judicial resources by reducing to one the number of judges addressing the same or similar pretrial issues.

---

dures." *In re Ad Valorem Tax Litig.,* 216 S.W.3d at 87.

**13.** The Districts advise the referenced mandamus actions are: *In re MHCB (USA) Leasing & Finance Corp. and Valero Refining–Texas, L.P.,* 2006 WL 1098922 (Tex.App.-Houston [1st Dist.] Apr. 6, 2006)(mem.op.); *In re Diamond Shamrock Refining Co., L.P.,* 2007 WL 63370 (Tex.App.Amarillo, Jan.10, 2007)(mem.op.).

**14.** The First Court of Appeals granted mandamus concluding some of the discovery requests compelled by the trial court's order were overly broad. *See In re MHCB (USA) Leasing & Finance Corp.,* 2006 WL 1098922 at *8. The Amarillo Court of Appeals granted mandamus and "vacated" the trial court's order compelling discovery of trade secrets. *See In re Diamond Shamrock Refining Co., L.P.,* 2007 WL 63370 at *3.

Fifth, Valero completely disagrees with the argument made by the Districts that Valero should have sought transfer and consolidation of cases pending in each county to achieve savings of time and money and to achieve convenience. Valero tells us that it has consolidated as best it can because it has not filed separate cases on each and every property in each county. For instance, in Bexar County it has filed two suits, one for personalty and one for real estate. However, were it to generally consolidate suits regarding several tax years, the issues would be muddled and confusing for the trier of the fact.

Finally, Valero contends transfer to a single pretrial judge "would advance justice by avoiding any appearance of judicial partiality." In this regard, Valero suggests that regardless of how a judge rules, there are likely to be allegations of favoritism either toward the local appraisal district or toward a corporate entity which might be alleged to be a "potential 'deep pocket' campaign contributor." Valero says transfer would prevent "any appearance of judicial impropriety and allowing each case to be remanded with the benefit of consistent rulings, so that all litigants are treated fairly and arrive at trial on an equal playing field."

In response, the Districts uniformly contend that any convenience and efficiency experienced in transfer of the cases to a pretrial court would be solely for the benefit of Valero. They assert: (1) Most districts have local experts; in fact, many districts use their in-house appraisers. (2) Many representatives of the Districts do go to hearings. Because the districts have limited budgets, the expense of travel and time for parties, witnesses and lawyers to travel to a central location for discovery or hearings is beyond their respective means. Such expenses would be a heavy burden to be borne by the taxpayers of each county. (3) As to the allegedly conflicting expert witness rulings in four cases tried in Harris County, the Districts tell us all of those cases currently are pending on appeal to the First Court of Appeals. In each case, the motions to exclude the witness's testimony were submitted and denied pretrial. In each of the four cases, the court of appeals will decide the merits of the expert witness contentions. A pretrial court ruling will not change the fact that the appellate courts will decide this expert witness point. (4) As to the two mandamus petitions pursued by Valero on non-expert witness discovery issues, the Districts tell us that one petition for writ of mandamus was decided by the 1st Court of Appeals in April 2006, while the Amarillo Court of Appeals decided the second mandamus matter on January 10, 2007.[15] Moreover, the Districts assert that the "factual and legal issues presented in each case were substantially different." There is a wide difference in time and subject matter in these mandamus cases. (5) The assertion that the discovery propounded by the districts is repetitive is an incomplete description. The Districts say that the discovery is predominately repetitive as to the convenience stores and the attendant personalty. The requests "are necessarily similar. However, the responses are vastly different from case to case." (6) The claim there is a possibility of "the appearance of judicial impartiality" regardless of who might be victorious in local venues is the "weakest argument." The Districts point out that any trial judge makes decisions every day which will be unpopular with 50% of the litigants, *i.e.,* those against whom the trial court rules.

■ Now, we consider these contentions. First, Valero has argued that convenience and efficiency will be achieved

---

15. *See supra note* 13.

by the presentation of the expert witness, *Daubert–Robinson* issues to a single pretrial judge and uniform scheduling of discovery of its experts. While Valero acknowledges in oral argument that convenience may be achieved more for Valero than for the Districts, the Districts uniformly tell us they will be inconvenienced by the whole process and that it will burden their public budgets. Further, all parties acknowledge the Harris County *Daubert–Robinson* issues as to Valero's personal property expert are on appeal to the First Court of Appeals. The District challenged Valero's expert in all four Harris County cases. However, the challenge to Valero's expert was decided adversely to Valero in two cases post verdict, on a motion for judgment notwithstanding the verdict. A pretrial court decision on this issue would not have precluded an appeal on the merits. On this record, we cannot conclude convenience and efficiency will be uniformly achieved for the parties as to expert witness issues by transfer to a pretrial judge.

Second, we consider the claim that inconsistent pretrial discovery rulings will be likely to occur in the future in the absence of a transfer order. The non-expert discovery issues described by the parties were raised in two trial courts and two courts of appeals. In the First Court of Appeals case, *In re MHCB (USA) Leasing & Finance Corp.*, the trial court compelled production of documents by order of December 14, 2005. Valero's objections were that the requests were "overly broad" in that information sought: (1) was not relevant, (2) was duplicative, or (3) was overly burdensome to produce. The court of appeals agreed with Valero's contentions in part and conditionally granted mandamus. *See In re MHCB (USA) Leasing & Financing Corp. and Valero Refining–Texas, L.P.*, 2006 WL 1098922 (Tex.App.Hous-ton [1st Dist] Apr. 6, 2006). As to the Amarillo Court of Appeals proceeding, *In re Diamond Shamrock Refining Co., L.P.*, the Court of Appeals addressed the trial court's June 21, 2006 order compelling production of documents which Diamond Shamrock claimed encompassed privileged trade secrets. The District and Valero agreed the documents sought to be discovered comprised trade secrets. The Court of Appeals concluded the District failed to prove necessity for the production of trade secrets stating the record lacked evidence " 'demonstrat[ing] with specificity' that the risk of an 'unjust result' is real if the trade secrets of Diamond Shamrock remain secret." An order conditionally granting mandamus relief issued directing the trial court to vacate its June 21, 2006 order. *In re Diamond Shamrock Refining Co., L.P.*, 2007 WL 63370 (Tex.App.Amarillo, Jan.10, 2007). On this record, we conclude the pretrial ruling complained about by Valero addressed different subject matters and took place at different times. Rulings by a single pretrial judge could likewise be subject to two or more mandamus actions over time. Transfer would not achieve convenience and efficiency based on these episodes.

Third, we consider Valero's charge that it is subjected to repetitive discovery. Although the discovery requests, particularly as to personal property, may be repeated, the information supplied by Valero in the answers about the properties will not be the same because of the individual, local nature of the property. On this record, we have not been shown transfer would reduce any repetition on this type of discovery.

Fourth, Valero tells us "on information and belief" that representatives of the districts do not generally go to hearings. The Districts strongly contest that assertion. The Districts maintain that the ex-

pense of travel for the lawyers and representatives is an unwarranted burden. We cannot agree with Valero on this point.

Fifth, as to voluntary consolidation of cases within a county, we are not convinced Valero can achieve the level of convenience and savings in time and money to the extent suggested by the Districts.

Finally, we are not persuaded by Valero's argument that transfer is necessary to shield local judges from accusations of judicial partiality or hypothetical pressure from local citizens or potential campaign contributors. There is nothing in this record to support Valero's contention other than speculation.

We conclude, on this record, the burden on the Districts of transfer to a pretrial court is significant and the convenience of such a transfer would primarily favor Valero. Further, on this record, we cannot agree with Valero's contention that transfer will avoid conflicting pretrial decisions by many different district courts on the same, repetitive *Daubert–Robinson* hearings and other discovery issues. As we concluded in *Valero I,* "On balance, any inconvenience to Valero's witnesses pales in comparison to the potential inconvenience to the local officials, their appraisal personnel, and their attorneys." *In re Ad Valorem Tax Litigation,* 216 S.W.3d at 86. Valero has not shown that consolidating these cases before one judge for pretrial proceedings would serve the convenience of the parties and witnesses.

## V. Conclusion

On this record, we conclude Valero has not shown the cases it seeks to transfer are "related," or that it would serve the convenience of the litigants, witnesses, or lawyers to have the pretrial issues heard by a single, pretrial judge. Valero's motion to transfer is denied.