Louis Dreyfus Pipeline LP (Dreyfus) is in the business of transporting crude oil and natural gas liquids. It owns and operates a pipeline system that winds through thirty counties of this state, from Liberty County in southeastern Texas to Winkler County in far west Texas. Dreyfus has filed individual lawsuits against 29 of the thirty County Appraisal Districts (Districts), challenging the appraised value of the pipeline for property tax purposes. It complains that the valuations were not based on the market value of the pipeline as required by Texas law.
Dreyfus has filed a motion to transfer these cases to a pretrial court for consolidated and coordinated pretrial proceedings. Rule 13 authorizes this panel to transfer "related" cases from different trial courts to a single pretrial court provided the transfer will accomplish two purposes: (1) serve the convenience of the parties and witnesses, and (2) promote the just and efficient conduct of the litigation. TEX. R. JUD. ADMIN. 13.3. In its motion, Dreyfus maintains that the underlying facts, circumstances, and legal arguments in these lawsuits are identical. It suggests that the only difference is the specific location of the pipeline which is inconsequential because the value of the pipeline does not vary from county to county. *Page 380 
Plainly stated, the crux of the matter is whether Dreyfus has sufficiently distinguished its ad valorem tax cases from those we considered in Valero I and ValeroII.[1] It has not. For the reasons set forth below, we deny the motion to transfer.
 PROCEDURAL POSTURE
We begin with a bit of procedural history. Dreyfus asserts that multi-county property should be consolidated as a matter of law because the Legislature has determined that for property tax purposes, certain properties may be consolidated for appeal. Pipeline property regulated by the Texas Railroad Commission and located in more than one county may be consolidated for appeal in the district court of any county in which an appraisal review board order is appealed. TEX. TAX CODE ANN. § 42.221 (Vernon 1993). Dreyfus argues that the Legislature has determined that common issues of fact and law pre-dominate in property tax appeals involving pipelines like the one in issue here.
Dreyfus filed individual lawsuits in each of the 29 counties. It then filed a motion for transfer and consolidation of all of the cases in district court in Midland County. The motion was denied by the trial court because of what Dreyfus characterizes as a "technicality". While it disagrees that the court's ruling was correct, it concluded that "bringing this [Rule 13] motion is more efficacious than pursuing an application for writ of mandamus."
The trial court's order acknowledged that the purpose of Section 42.221 is to allow consolidation of appeals from various appraisal review boards when a petition for review is filed in a single district court. But it does not authorize a district judge to transfer to its docket petitions for review already filed and pending in another district against a taxing entity within that other court's jurisdiction. While Section 42.221 offered a remedy, Dreyfus did not properly avail itself of relief. In mentioning this procedural posture, we should not be heard to express either agreement or disagreement with the trial court's ruling. We mention it because we disagree with Dreyfus that the legislative intent behind Section 42.221automatically entitles Dreyfus to a transfer pursuant to Rule 13. We thus proceed to the initial question before us.
 ARE THE CASES "RELATED"?
Under Rule 13.2(f), cases are "related" if they involve "one or more common questions of fact." TEX. R. JUD. ADMIN. 13.2(f); TEX. GOV'T CODE § 74.162 (Vernon 2005). Dreyfus contends that the common issue among the 29 lawsuits is the correct appraised value of a pipeline for ad valorem tax purposes. It distinguishes our Valero opinions on this basis: the valuation of the Dreyfus pipeline does not involve the same "inherently individualized and local process." Valero
addressed challenges to the valuation of refineries, pipelines, terminals, and convenience stores by 42 appraisal districts. Here, argues Dreyfus, the issue is limited to the valuation of a single pipeline, the market value of which is not determined by local factors that vary from county to county. Dreyfus further claims that the pipeline system is personal property, not real property, which has been fully depreciated.
All of the defendant Appraisal Districts oppose consolidation and their reasoning is substantially similar. Indeed, they persuasively argue that the pipeline is not a *Page 381 
single homogeneous unit extending through multiple counties: "Rather, it is a web of feeder lines and lengths, which have different ages and sizes." Because the value of a pipeline is not the same from county to county, they claim location is clearly relevant. The value is likely to be subject to a number of variables unique to each county. For example:
• The pipelines vary from county to county in diameter, condition, and age.
• The segments were built in stages such that they will be depreciated differently according to age and condition. Some segments in Anderson County were installed in 1993. The pipe in Pecos County was buried in 1955.
• Pipe in one county may require extensive maintenance while pipe in another county may be in good condition.
• Oil or gas production in one part of the state may be greater than another, thus affecting demand for pipeline usage in that area.
• A willing buyer might pay more for new segments, and may factor in the repair history of each segment.
Nor, we are told, is the Dreyfus property limited to the pipeline itself. The properties in Navarro and Polk Counties include microwave repeater stations. Dreyfus also owns real property in Navarro County.[2] Bosque County informs us that Dreyfus's property there includes a compressor station, a 310 foot communications tower, an eight inch oil pipeline installed in 1927, a twelve inch gas pipe-line installed in 1947, a twelve inch oil pipeline installed in 1943 and an eight inch gas pipeline installed in 2006. In that regard, the Districts contend this case is indistinguishable from Valero.
They submit that "the characteristics of pipeline segments are far more dissimilar to each other than inventory consisting of the same merchandise from store to store." Like inventory, they continue, the appraised value of the segments will be determined by their own characteristics.
As to Dreyfus's contention that the appraised values of the properties are not equal and uniform in comparison to other properties, the Districts respond that Dreyfus will have to prove that for each county the appraised value exceeds the appraisal district's appraised value of comparable propertieswithin the same appraisal district. It is their unified position that a claim for relief is unique to the appraised values in each county and bears no relationship to equal-and-uniform claims in another county.
The Districts also challenge Dreyfus's contention that the properties are "fully depreciated" and constitute "personal property." They allege that Dreyfus does not demonstrate how the property is depreciated, whether for income tax purposes or for appraisal purposes. Nor has it shown that the pipeline — which has been underground for as long as eighty years — is personalty. Citing Logan v. Mullis,686 S.W.2d 605, 607 (Tex. 1985), they argue that one factor in determining whether property is realty or personalty is the intention of the party who annexed the chattel to the realty. They conclude that Dreyfus has manifested its intent to keep the pipeline in place and that anything attached to realty that cannot be moved without materially damaging the property loses its character as personal property and becomes part of the realty. See Houston *Page 382 Bldg. Serv., Inc. v. American General Fire Cos.Co., 799 S.W.2d 308 (Tex.App.-Houston [1st Dist.] 1990, writ denied).
As we noted in Valero I, we do not accept the suggestion that the real property and improvements situated in different counties are necessarily similar. Valero,216 S.W.3d at 85. There, we found that individualized fact inquiries preponderated over whatever common issues there may be. Id. And we concluded that "[b]ecause property valuation is such an individualized and local inquiry, and because it is the core issue in each of these cases, we respectfully reject the argument that these cases involve one or more common fact questions within the meaning of rule 13."Id.
We agree with the Districts that the only thing common to all of the lawsuits is that Dreyfus owns pipeline segments in each county. Without regard to whether the pipeline is personalty or realty, the assets to be valued encompass more than the pipeline itself. We hold that the appraisal cases at issue are not "related" within the meaning of Rule 13. Consequently, we need not address the constitutional and tax code arguments offered by the Districts.
 WOULD TRANSFER FURTHER CONVENIENCE AND EFFICIENCY?
Even if Dreyfus could establish that these lawsuits are in fact related, we would nevertheless deny the motion. In support of its argument that consolidation will serve to further the convenience of the litigants and witnesses, Dreyfus points to the fact that three outside appraisal firms were used by 25 of the 29 defendant Appraisal Districts.[3] Accordingly, the defense witnesses will not be the local appraisers but rather an appraiser from one of the independent appraisal companies who would have to travel even more if the cases are not consolidated for pre-trial proceedings. Twenty-seven of the 29 defendant appraisal districts are represented by three law firms.[4] Consequently, Dreyfus concludes that consolidation will decrease the cost and reduce the time incurred by all parties.
The Districts counter that if the 29 cases are rolled into one pre-trial court, the potential number of hearings and discovery matters that could bear on each district would be multiplied significantly. They maintain that no party could afford to miss a hearing that might be determinative of its own rights and liabilities. All of the attorneys and the experts would be likely to attend multiple hearings they would not otherwise attend. Instead of decreasing litigation expense, the cost incurred by each district would increase. And while consolidation would prove more convenient for Dreyfus, most of the Districts would be inconvenienced. We are told that the chief *Page 383 
appraiser of each district typically attends local pretrial proceedings. Chief appraisers should be aware of litigation affecting the district and taxing entities. They also need to be able to report on pending litigation to the district's board of directors and first-hand accounts are critical to frank discussions with the board. Finally, the chief appraisers sometimes testify in pre-trial hearings.
We said in Valero I that Appraisal District personnel will clearly be inconvenienced if they must travel to one central court instead of the local courthouse. Valero,216 S.W.3d at 86. We recognized that:
 Several of the districts are located in smaller counties, and the amount of tax revenue in their cases is small; to them there is a great difference between pre-trial hearings in their own county and hearings in a distant central county for all these cases.
Id. In fact, only two chief appraisers from the 29 Appraisal Districts attended the Midland hearing on the Section 42.221 motion to consolidate. Moreover, the sheer length of the pipeline[5] mandates air travel while many of the counties lack airport facilities.
Finally, Dreyfus complains that in the absence of consolidation, all of the common factual and legal issues will be litigated repeatedly such that it runs the risk of potentially inconsistent results.[6] All of the lawsuits will involve expert testimony concerning the market value of the pipeline and 29 judges will evaluate the expert testimony and issue Daubert-Robinson[7] rulings. Because the litigants will not have a clear sense of the value of their claims, settlement will be more difficult and the judicial system as a whole will be burdened for a longer period of time. The Districts respond that these are the very same arguments unsuccessfully urged by the Valero entities. Again we agree. This panel has previously acknowledged that allegations of inconsistent Daubert-Robinson rulings is a factor to be considered in addressing convenience and efficiency issues. "But that holding does not mean that it is sufficient to make the bare assertion that witnesses might be inconvenienced. The circumstances of the litigation must at least make the assertion plausible." Valero, 216 S.W.3d at 86.
We conclude that Dreyfus has not demonstrated that the cases it seeks to transfer are "related," nor has it shown that consolidation would serve the convenience of the litigants, witnesses, or attorneys. For these reasons, we deny the motion to transfer.
Presiding Judge PEEPLES and Justices LANG, HANKS, and STONE join.
[1] See In re Ad Valorem Tax Litigation,216 S.W.3d 83 (Tex. M.D.L. Panel 2006) (Valero I) and In reAd Valorem Tax Litigation, 287 S.W.3d 517
(Tex. M.D.L. Panel 2007) (Valero II-).
[2] In its Reply, Dreyfus for the first time concedes that it does not intend to include land or buildings in its Motion to Transfer. It specifically excludes the vehicles in Midland County and the following acreage: 17.17 acres in Eastland County; 88.34 acres in Martin County; 2.57 acres in Mitchell County; and 3.79 acres in Navarro County.
[3] These appraisal companies are Pritchard Abbott of Fort Worth, Capital Appraisal Group of Austin, and T.Y. Pickett, whose main office is in Dallas. Pritchard Abbott assessed the pipeline value for Bosque, Crane, Eastland, Erath, Freestone, Houston, Leon, Martin, Midland, Mitchell, and Nolan Counties. Capitol Appraisal Group valued the pipeline for Anderson, Andrews, Comanche, Hamilton, Hill, Howard, Johnson and Liberty Counties. T.Y. Pickett assessed the value for Henderson, Navarro, Pecos, Scurry, Upton and Winkler Counties.
[4] Dreyfus tells us that the firm of Perdue, Brandon, Fielder, Collins Mott represents thirteen of the appraisal districts, four from their Houston office and nine through their Austin office. The Austin firm of Hargrove Evans represents seven appraisal districts, as does the Austin firm of McCreary, Veselka, Bragg Allen. Haley Olson of Waco represent Bosque County and Stewart McKeehan in Odessa represent Ector County.
[5] The record does not reveal the actual length of the pipeline. Yet Liberty, Texas [Liberty County] is 621 miles from Kermit, Texas [Winkler County]. See
http://www.mapquest. com/maps/Liberty + TX/Kermit + TX/.
[6] Dreyfus informs us that the current procedural status of the cases makes them ideal candidates for transfer to one consolidated proceeding. Inasmuch as all 29 cases were filed within the last six months, discovery is at a preliminary stage. Written discovery has been propounded in a few of the cases, but no answers or responses have been served and no depositions have been taken.
[7] See Daubert v. Merrell Dow Pharms., Inc.,509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993); E.I. duPont de Nemours Co., Inc. v. Robinson,923 S.W.2d 549 (Tex. 1995). *Page 384