FILED
14-1030
1/30/2015 8:10:31 PM
tex-3974948
SUPREME COURT OF TEXAS
BLAKE A. HAWTHORNE, CLERK

# No. 14-1030

## *Judicial Panel on Multidistrict Litigation*

### IN RE WASHBURN RANCH WELL-SITE FIRE LITIGATION

### PIONEER NATURAL RESOURCES COMPANY AND PIONEER NATURAL RESOURCES USA, INC.'S REPLY TO RESPONDENTS SYLVIA RODRIGUEZ, ET AL, HONEY CUEVAS, ET AL, AMANDA AMBER GONZALEZ, ET AL, AND OLIVIA RIVERA GONZALEZ'S RESPONSE TO MOTION FOR TRANSFER

**TEKELL, BOOK, ALLEN & MORRIS, L.L.P.**
Michael P. Morris
State Bar No. 14495800
mmorris@tekellbook.com
Kenneth Tekell, Sr.
State Bar No. 19764000
ktekell@tekellbook.com
1221 McKinney Street, Suite 4300
Houston, Texas 77010
Telephone:  713.222.9542
Facsimile:  713.655.7727

**NAMAN, HOWELL, SMITH & LEE, PLLC**
David L. Ortega
State Bar No. 0079377
dortega@namanhowell.com
10001 Reunion Place, Suite 600
San Antonio, Texas 78216
Telephone:  210.731.6353
Facsimile:  210.785.2953

**ATTORNEYS FOR PIONEER NATURAL RESOURCES COMPANY AND PIONEER NATURAL RESOURCES USA, INC.**

# TABLE OF CONTENTS

TABLE OF AUTHORITIES .................................................................................3

INTRODUCTION ..............................................................................................6

ARGUMENTS AND AUTHORITIES ...............................................................7

    I.     Dominant jurisdiction is irrelevant to whether these cases should be transferred to a pretrial court for consolidated and coordinated pretrial proceedings .......................................................7

    II.    Whether Hidalgo County is a proper venue for the Cuevas and Gonzalez lawsuits is irrelevant to whether these cases should be transferred to a pretrial court for consolidated and coordinated pretrial proceedings .......................................................8

    III.   Pioneer has established that the five underlying cases are related under Rule 13.2 .......................................................11

    IV.   Consolidation will minimize inconvenience and promote the just and efficient handling of the cases ...............................18

    V.    Pioneer did not request transfer to a particular county ......................23

CONCLUSION.................................................................................................24

CERTIFICATE OF SERVICE .........................................................................26

# TABLE OF AUTHORITIES

## CASES

*In re Ad Valorem Tax Litigation,*
216 S.W.3d 83 (Tex. M.D.L. Panel 2006).............................................................18

*In re Ad Valorem Tax Litigation,*
287 S.W.3d 517 (Tex. M.D.L. Panel 2007)....................................................14, 15

*In re Cano Petroleum, Inc.,*
283 S.W.3d 170 (Tex. M.D.L. Panel 2008).........................................................13

*In re Continental Airlines Flight 1404,*
387 S.W.3d 925 (Tex. M.D.L. Panel 2009).........................................................12

*In re Deep South Crane & Rigging Co.,*
339 S.W.3d 395 (Tex. M.D.L. Panel 2008).........................................................19

*In re Delta Lloyds Insurance Company of Houston,*
339 S.W.3d 383 (Tex. M.D.L. Panel 2008)....................................................14, 15

*In re Digitek Litig.,*
387 S.W.3d 115 (Tex. M.D.L. Panel 2009).........................................................18

*In re Hurricane Rita Evacuation Bus Fire,*
216 S.W.3d 70 (Tex. M.D.L. Panel 2006)................................................12, 13, 19

*In re Kone, Inc.,*
216 S.W.3d 68 (Tex. M.D.L. Panel 2005)....................................................14, 17

*In re Louis Dreyfus Pipeline LP Tax Litigation,*
339 S.W.3d 378 (Tex. M.D.L. Panel 2008)....................................................14, 16

*In re Missouri Pac. R. R.,*
998 S.W.2d 212 (Tex. 1999).............................................................................11

*In re Personal Injury Litigation Against Great Lake Dredge & Dock Co.,*
283 S.W.3d 547 (Tex. M.D.L. Panel 2007)....................................................14, 16

*In re Wellington Ins. Co. Hailstorm Litig.,*
427 S.W.3d 581 (Tex. M.D.L. Panel 2014) ........................................................11

*Wyatt v. Shaw Plumbing Co.,*
760 S.W.2d 245 (Tex. 1988) ..............................................................................7

**STATUTES**

Tex. Civ. Prac. & Rem. Code § 15.001(a)...................................................10, 11

Tex. Gov't Code § 74.162 ..................................................................................11

Tex. R. Jud. Admin. 13.2(f).................................................................................11

Tex. R. Jud. Admin. 13.6(c). ...............................................................................9

## NO. 14-1030

| IN RE | § | JUDICIAL PANEL |
|---|---|---|
| | § | |
| WASHBURN RANCH | § | ON MULTIDISTRICT |
| WELL-SITE FIRE | § | |
| LITIGATION | § | LITIGATION |

## MOTION FOR TRANSFER

Pioneer Natural Resources Company and Pioneer Natural Resources USA, Inc. ("Pioneer")[1] replies to the Respondents', Sylvia Rodriguez, Individually and on Behalf of Roel Rodriguez, Sr., et al ("Rodriguez Respondents"), Honey Cuevas, et al, Amanda Amber Gonzalez, et al, and Olivia Rivera Gonzalez (collectively "Cuevas/Gonzalez Respondents") Response to Pioneer Natural Resources Company and Pioneer Natural Resources USA, Inc.'s Motion for Transfer, and would respectfully show the following:

---

[1] Pioneer Natural Resources USA, Inc. is the operator, lease holder, and mineral interest owner in the Washburn Ranch wells in question located in La Salle County where the flash fire made the basis of the lawsuits filed against Pioneer occurred. Pioneer Natural Resources USA, Inc. is a corporation incorporated in Delaware with its principal office and principal place of business in Dallas County, Texas. Pioneer Natural Resources USA, Inc. is a wholly-owned subsidiary of Pioneer Natural Resources Company, which is a corporation incorporated in Delaware with its principal office and principal place of business in Dallas County, Texas. Pioneer Natural resources Company owns 100% of Pioneer Natural Resources USA, Inc.

# INTRODUCTION

Dominant jurisdiction is irrelevant to this Court's determination of whether to transfer the five[2] underlying actions to a pretrial court for consolidated and coordinated pretrial proceedings. Contrary to the Rodriguez Respondents' assertion, the five underlying actions are related within the meaning of Rule 13 because they all arise from one common-event, namely the flash fire that occurred at the Washburn Ranch well-site on October 24, 2014, and the core issues of fact common to all the cases will be the causation of the flash fire and the negligence, if any, of all the Defendants.[3] These common core issues of fact will be determined by examining the same fact and common expert witnesses. Further, transfer would be for the convenience of the parties and witnesses and would promote the just and efficient conduct of actions because it would eliminate duplicative discovery,

---

[2] At the time Pioneer filed its Motion for Transfer on December 10, 2014, there were only four pending cases. A fifth case has since been filed on January 15, 2015, which is styled *Olivia Rivera Gonzalez, Individually and as Administrator of the Estate of Armando Manuel Gonzalez, Deceased v. Pioneer Natural Resources, USA, CC Forbes, LLC; Cielo Energy Consulting, LLC; Weatherford International, LLC; Energes Oilfield Solutions, LLC; Energy Lease Services, Inc.; BEA Logistics Services, LLC d/b/a Cornell Solutions; and KLX Energy Services, LLC d/b/a Cornell Solutions,* Cause No. C-0205-15-C in the 139th District Court of Hidalgo County, Texas. *See* Cuevas/Gonzalez Response Exhibit V. Additionally, CC Forbes, LLC intervened on December 10, 2014 and Cal Harvey and Christi H. Harvey intervened on December 12, 2014 in the Rodriguez Dallas County Lawsuit, Cause No. DC-14-12627. *See* Cuevas/Gonzalez Response Exs A and B.

[3] Defendant EOG Resources, Inc. has recently been non-suited as it had no interest in or responsibility for the operation of the well-site in question. Recently added Defendants, Energes Oilfield Solutions, LLC, Energy Lease Services, Inc., Allied Wireline Services LLC, and BEA Logistics Services LLC, now KLX Energy Services LLC consent to Pioneer's Motion for Transfer to a MDL pretrial court.

minimize conflicting demands on witnesses, prevent inconsistent decisions on common issues, and reduce unnecessary travel.

## ARGUMENTS AND AUTHORITIES

I.    **Dominant jurisdiction is irrelevant to whether these cases should be transferred to a pretrial court for consolidated and coordinated pretrial proceedings**

Both the Cuevas/Gonzalez and the Rodriguez Responses contend that the first-filed Bexar County lawsuit is not relevant to this Court's determination of whether to transfer the five underlying cases into one coordinated pretrial proceeding. In fact, the Rodriguez Respondents go so far as to contend that the Dallas County Rodriguez lawsuit is actually the first-filed lawsuit. While it is true that the Dallas County Rodriguez lawsuit is the first-filed lawsuit against Pioneer in a county of proper venue (county of Pioneer's principal office in state of Texas) and may have dominant jurisdiction over the Bexar County Rodriguez Lawsuit under *Wyatt v. Shaw Plumbing Co.*, 760 S.W.2d 245, 248 (Tex. 1988), because of the Rodriguez's lack of intent to prosecute the Bexar County lawsuit, that does not change the fact that the Bexar County lawsuit was filed and is still pending. Indeed, despite the current Rodriguez attorney's insistence, the fact remains that the Bexar County Rodriguez lawsuit still remains pending. If and when served, Pioneer would likely file a motion to transfer venue, or in the alternative, a plea in abatement. However, determining which court may have dominant jurisdiction is

7

irrelevant to whether the five underlying cases should be transferred under multi-district litigation rules to one pretrial court for consolidated and coordinated pretrial proceedings including, but not limited to Texas Rule of Civil Procedure Rule 12 Motions to Show Authority, venue challenges, and pleas in abatement.

**II.    Whether Hidalgo County is a proper venue for the Cuevas and Gonzalez lawsuits is irrelevant to whether these cases should be transferred to a pretrial court for consolidated and coordinated pretrial proceedings**

The Cuevas/Gonzalez Respondents contend that venue is proper in Hidalgo County, Texas because BEA Logistics Services, LLC ("BEA") and KLX Energy Services, LLC ("KLX") each have a principal office in Hidalgo County.[4] However, whether venue is proper in Hidalgo County is irrelevant to this Court's determination of whether to transfer the five underlying cases to one court for consolidated and coordinated pretrial proceedings. Once again, after a case is transferred, the pretrial court should at the earliest practical date, conduct a hearing and enter a case management order which addresses all matters pertinent to the conduct of the litigation, including:

(1)  settling the pleadings;
(2)  determining whether severance, consolidation, or coordination with other actions is desirable and whether identification of separable triable portions of the case is desirable;
(3)  scheduling preliminary motions;

---

[4] *See* Cuevas/Gonzalez Response to Pioneer's Motion for Transfer, p. 6.

8

(4) scheduling discovery proceedings and setting appropriate limitations on discovery, including the establishment and timing of discovery procedures;

(5) issuing protective orders;

(6) scheduling alternative dispute resolution conferences;

(7) appointing organizing or liaison counsel;

(8) scheduling dispositive motions;

(9) providing for an exchange of documents, including adopting a uniform numbering system for documents, establishing a document depository, and determining whether electronic service of discovery materials and pleadings is warranted;

(10) determining if the use of technology, videoconferencing, or teleconferencing is appropriate;

(11) considering such other matters the court or the parties deem appropriate for the just and efficient resolution of the cases; and

(12) scheduling further conferences as necessary.

Tex. R. Jud. Admin. 13.6(c). Plaintiffs' Rule 11 "Discovery Sharing Plan," while a tacit admission that an MDL is needed in this case, does not cover all the matters pertinent to the conduct of this type of litigation such as: (1) motions to show authority; (2) motions to transfer venue and pleas in abatement; (3) settling pleadings; (4) severance and consolidation; (5) protective orders protecting confidentiality of documents; (6) preservation of documents and equipment involved in the incident; (7) document production; (8) status conferences; (9) timing of depositions after written discovery; and (10) timing of motions for summary judgment.

Moreover, at the time Pioneer filed its Motion for Transfer on December 10, 2014, neither BEA nor KLX were named as Defendants in any of the Plaintiffs'

9

cases.[5] Further, even if BEA or KLX had been named as Defendants before Pioneer filed its Motion for Transfer, upon information and belief, neither BEA nor KLX have a principal office for venue purposes in Hidalgo County, Texas. Rather, BEA/KLX's principal office for venue purposes is in Houston, Harris County, Texas.[6]

The Texas Civil Practice & Remedies Code defines "principal office" to mean:

> a principal office of the corporation . . . in this state in which the decision makers for the organization within this state conduct the daily affairs of the organization. *The mere presence of an agency or representative does not establish a principal office.*

Tex. Civ. Prac. & Rem. Code § 15.001(a) (emphasis added). At the time of the October 24, 2014 flash fire, no entity by the name of Cornell Solutions, LLC even existed.[7] As indicated by Exhibit A, Cornell Solutions, LLC ceased to be an "active" name on June 19, 2014, because it had been acquired by BEA/KLX. What offices remained of the former Cornell Solutions, LLC in Hidalgo County were

---

[5] BEA and KLX were not originally named by any of the Plaintiffs as of December 10, 2014, when Pioneer filed its Motion for Transfer. On December 19, 2014, the Cuevas Plaintiffs, Cause No. C-8200-14-D in the 206th Judicial District of Hidalgo County, filed their Second Amended Original Petition, which, for the first time, included Defendants BEA and KLX. On December 23, 2014, the Rodriguez Plaintiffs, Cause No. DC-14-12627 in the 191st District Court of Dallas County, named BEA and KLX for the first time in their First Amended Original Petition. On January 13, 2015, Plaintiff Amanda Amber Gonzalez, Cause No. C-8609-14-H in the 389th Judicial District of Hidalgo County, named BEA and KLX for the first time in her First Amended Original Petition. On January 15, 2015, Plaintiff Olivia Gonzalez filed her Original Petition, which included BEA and KLX as named Defendants.

[6] KLX's principal office in Texas is located at 2700 Post Oak Blvd., Suite 1400, Houston, Texas 77056.

[7] *See* Exhibit A.

and are not the principal offices of either BEA or KLX. Rather, that office is likely only a branch office and represents the presence of an agency or representative of BEA and/or KLX in Hidalgo County. *In re Missouri Pac. R. R.*, 998 S.W.2d 212, 220 (Tex. 1999); Tex. Civ. Prac. & Rem. Code § 15.001(a). In *Missouri Pacific*, this Court concluded that "a principal office is not an office clearly subordinate to and controlled by another Texas office. 998 S.W.2d at 220. Here, the BEA/KLX branch in Hidalgo County, while it may have some autonomy as all branch operations do, is ultimately an office that is "clearly subordinate to and controlled by another Texas office," namely the BEA/KLX principal office in Houston, Harris County, Texas.

### III. Pioneer has established that the five underlying cases are related under Rule 13.2

Under Rule 13.2(f) cases are related if they involve "one or more common questions of fact." Tex. Gov't Code § 74.162; Tex. R. Jud. Admin. 13.2(f). This Court has concluded "in many of [its] previous common-event cases, relatedness was easily established because the salient issue in the cases was whether one or more defendants were *liable for* the event." *In re Wellington Ins. Co. Hailstorm Litig.*, 427 S.W.3d 581, 584 (Tex. M.D.L. Panel 2014) (emphasis in original). Here, the salient issue in all five underlying cases is which contractor/Defendant supplying services and equipment, if any, is liable for the flash fire that occurred on the Washburn Ranch well-site on October 24, 2014.

11

In *In re Hurricane Rita Evacuation Bus Fire*, 216 S.W.3d 70 (Tex. M.D.L. Panel 2006), this Court concluded that eight lawsuits arising from a fire on a bus were related. 216 S.W.3d at 72. While this Court acknowledged that the defendants were not identical in all the cases, that different expert witnesses may testify, and that each individual's damages would be different, it nonetheless concluded that these cases were related because they "arise from one common event, and no one has seriously denied that the liability issues in each of them will be substantially the same . . . [and] the lawyers will be examining the same large pool of employees and fact witnesses." *Id.* Here, the five underlying cases arise from one common event—the October 24, 2014 flash fire—and no one has seriously denied that the liability issues in each will be substantially the same. *See id.*

Similarly, in *In re Continental Airlines Flight 1404*, 387 S.W.3d 925 (Tex. M.D.L. Panel 2009), this Court concluded that six suits arising from a fire on an airplane were related because they all involved the same liability issues and would rely on testimony from the same fact and common expert witnesses. 387 S.W.3d at 929. In *Continental Airlines,* Movants, Continental Airlines, contended that all of the lawsuits incorporated allegation of negligence and negligent hiring, training, and supervision, i.e., liability issues that would require testimony from the same fact and expert witnesses. *Id.* Therefore, this Court concluded that it was "hard pressed to distinguish the circumstances here from those in *In re Hurricane Rita*

*Evacuation Bus Fire.*" *Id.* Additionally, this Court in *In re Cano Petroleum, Inc.,* 283 S.W.3d 170 (Tex. M.D.L. Panel 2008), concluded that seven lawsuits filed against four oil and gas operators for negligently causing a wildfire were "clearly related" because "like the *Hurricane Rita* cases, they will explore negligence and causation issues in one enormous event." 283 S.W.3d at 181.

Here, one common-event is the basis of all the underlying lawsuits—the flash fire that occurred at the Washburn Ranch well-site on October 24, 2014. The core issue of fact common to all of the underlying lawsuits will be what caused this flash fire. Therefore, the five underlying cases will explore the negligence, if any, of the Plaintiffs, contractor employees, contractors/Defendants, and Pioneer and the causation of one tragic event. Therefore, one should be "hard pressed" to distinguish these circumstances from those in *Hurricane Rita Evacuation, Continental Airlines,* and *Cano Petroleum. See Hurricane Rita Evacuation,* 216 S.W.3d at 72. Accordingly, the five underlying cases are clearly related under Rule 13 as they all involve the same or identical liability and causation issues.

The Rodriguez Respondents emphasize the erroneous allegation that the Plaintiffs in all the underlying lawsuits have not sued the same defendants as being a reason why this Court should not grant Pioneer's Motion.[8] However, "[w]hile the rule requires common questions of fact, strict identity of issues and parties in the

---

[8] *See* Respondents' Response to Pioneer Natural Resources Company and Pioneer Natural Resources USA, Inc.'s Motion for Transfer, p. 7.

13

cases is not required . . . " *In re Delta Lloyds Insurance Company of Houston*, 339 S.W.3d 383, 386 (Tex. M.D.L. Panel 2008). Therefore, the fact that the defendants are not identical in all of the five underlying cases is irrelevant for purposes of determining whether to transfer to consolidated pretrial proceedings. Moreover, recently filed amendments to pleadings in the Cuevas and Gonzalez lawsuits make clear that all Plaintiffs have added the same defendants currently named by the Rodriguez family.

Moreover, any reliance by either the Cuevas/Gonzalez and/or the Rodriguez Respondents on *Delta Lloyds*; *In re Ad Valorem Tax Litigation*, 287 S.W.3d 517 (Tex. M.D.L. Panel 2007) ("*Valero II*"); *In re Louis Dreyfus Pipeline LP Tax Litigation*, 339 S.W.3d 378 (Tex. M.D.L. Panel 2008); *In re Personal Injury Litigation Against Great Lake Dredge & Dock Co.,* 283 S.W.3d 547 (Tex. M.D.L. Panel 2007); and *In re Kone, Inc.*, 216 S.W.3d 68 (Tex. M.D.L. Panel 2005), to argue that these cases are not related,[9] is misplaced as these cases are distinguishable from those before the Court today.

Both the Cuevas/Gonzalez and Rodriguez Respondents rely on *In re Delta Lloyds* to mistakenly claim that to prove cases are related, it is not enough to show that the cases arise from a common event.[10] However, their reliance on *Delta*

---

[9] *See* Rodriguez Respondents' Response to Pioneer Natural Resources Company and Pioneer Natural Resources USA, Inc.'s Motion for Transfer, p. 9.
[10] *See* Cuevas/Gonzales Response, p. 10; Rodriguez Response, p. 9.

*Lloyds* is wholly misplaced because its analysis is "a unique approach" developed by the Court for cases involving first-party insurance claims arising from a "*weather event.*" *Wellington*, 427 S.W.3d at 583. In *Delta Lloyds*, the common-event was not an accident for which a defendant could be liable; rather, the common-event of the underlying cases was a natural disaster, specifically, Hurricane Rita. 339 S.W.3d at 387. Because the common event was a natural weather event, for which no defendant could be considered liable, it was "a common undisputed fact rather than a common question of fact." *Id.* Therefore, and contrary to both the Rodriguez Respondents' and the Cuevas/Gonzales Respondents' assertions of the holding in *Delta Lloyds*, the Court "held in *In re Delta Lloyds* . . . that a common *natural* event, without more, does not make cases related under Rule 13." *Wellington*, 427 S.W.3d at 583 (emphasis added). Here, the common-event of the underlying cases is not a natural disaster for which none of the current Defendants could be held liable; rather, the common-event is wholly one for which one of the Plaintiffs and/or Defendants may be liable.

*In re Ad Valorem Tax Litigation* ("*Valero II*") involved the ad valorem valuation of various properties, which the movant, Valero, asserted was the over arching common issue of fact that made the cases related. 287 S.W.3d at 519. However, as this Court concluded, these cases were not related within the meaning of Rule 13 because each underlying suit required specific inquiries into the

valuation of separate and distinct properties. *Id.* The valuation of these various properties was an inherently individualized process; therefore, the individual issues predominated in the underlying cases. *Id.* Moreover, any reliance on *Louis Dreyfus*, is similarly misplaced as this case involved twenty-nine individual lawsuits challenging the appraisal valuation of a pipeline that ran through multiple counties. The Court concluded that these cases were not related because "the assets to be valued encompass more than the pipeline itself" and the valuation is subject to a number of variables unique to each county. 339 S.W.3d at 382. Therefore, unlike the inherently individualized valuation of separate properties in *Valero II* and a pipeline spanning multiple counties in *Louis Dreyfus*, the determination of causation and liability for the flash fire in the five underlying cases is clearly related as it does not turn on individual and unique variables.

In *Great Lake Dredge,* this Court concluded that the underlying cases were not related because the only commonality between the twenty plaintiffs, who were injured at different times, in different states, on different vessels, and while engaging in different activities was whether Great Lakes was liable under the Jones Act. 283 S.W.3d at 548. Here, unlike the plaintiffs in *Great Lake Dredge*, the Plaintiffs were injured in the same accident, at the same time, at the same well-site, and while engaging in related activities. Therefore, unlike the underlying cases in *Great Lake Dredge*, these underlying cases are clearly related under Rule 13.

16

In *In re Kone*, another case mistakenly relied upon by the Cuevas/Gonzalez Respondents, involved four cases in which hospital operators sued Kone for breach of an elevator/escalator maintenance contract. 216 S.W.3d at 69. The Court concluded that "the facts are substantially individual as they relate to each hospital facility . . . [f]or instances, we have not been shown how the facts discovered from witnesses on the issue of breach of contract and damages in the Harris County case will have any relation to or bearing on the ultimate issues in the Bowie, Cameron, and Nueces County cases." *Id.* at 70. Therefore, the Court decided not to transfer these cases because each case involved a separate hospital facility and "local" facts. *Id.* However, as Pioneer discussed in its Motion to Transfer and continues to discuss in this Reply, the facts discovered from the witnesses of each of the underlying cases will have a relation to and a bearing on the ultimate liability issues in all of the underlying cases.

The salient issues in the five underlying cases are the cause and origin of the fire and whether one of the Plaintiffs, contractor employees, or Defendants may be liable for the October 24, 2014 flash fire. This issue will naturally explore common questions of fact regarding the causation of the flash fire and the negligence, if any, of the Plaintiffs and/or Defendant contractors supplying services and equipment to the well-site, and the leaseholder and mineral interest owner. It will also rely on

17

testimony from the same fact and common expert witnesses. Therefore, the five underlying cases are related within the meaning of Rule 13.

**IV. Consolidation will minimize inconvenience and promote the just and efficient handling of the cases**

Assigning the underlying five cases to one judge for pretrial matters will minimize the inconvenience to the witnesses and parties and will promote the just and efficient handling of the cases by eliminating duplicative discovery, minimizing conflicting demands on witnesses, and reducing unnecessary travel. *See In re Digitek Litig.*, 387 S.W.3d 115, 116–17 (Tex. M.D.L. Panel 2009).

In discussing whether transfer would further convenience and efficiency, this Court has previously held that:

> [A] party seeking a pretrial MDL court need not show that parties or witnesses have already been inconvenienced. But that holding does not mean that it is sufficient to make the bare assertion that witnesses might be inconvenienced. *The circumstances of the litigation must at least make the assertion plausible.*

*In re Ad Valorem Tax Litigation*, 216 S.W.3d 83, 86 (Tex. M.D.L. Panel 2006) ("*Valero I*") (emphasis added). The circumstances of the five underlying and related cases, i.e., the common questions of fact regarding negligence and causation, make the assertion that the witnesses and parties will be inconvenienced very plausible.

18

Pioneer has identified fact and common expert witnesses who will undoubtedly be nearly identical in each of the cases, e.g., those who witnessed the flash fire; those who responded to the scene to provide rescue; those who treated the injured at the scene; those who transported the injured to the hospital; those who treated the injured at Brooke Army Medical Center Hospital; those working at the well-site immediately before and at the time of the flash fire; and those who investigated the accident. "When rule 13 voices its concern for efficiency and for the convenience of the parties and witnesses, it has such persons in mind." *In re Deep South Crane & Rigging Co.*, 339 S.W.3d 395, 397 (Tex. M.D.L. Panel 2008) (concluding that listing the employees who assembled the crane in Harris County, those who witnessed the crane's collapse, those who responded to the scene to provide rescue and medical care, and those who investigated it as potential witnesses was sufficient to establish that consolidation would minimize inconvenience to the witnesses and parties and promote the just and efficient handling of the case); *see also Hurricane Rita Evacuation*, 216 S.W.3d at 72 (concluding that the convenience and efficiency established when lawyers would be examining the same large pool of employees and fact witnesses including those who dealt with the bus, those who witnessed the fire, those who responded to the scene to provide rescue and medical care, and those who investigated it).

19

And while the identification of such fact and common expert witnesses is sufficient to establish convenience and efficiency, in an attempt to be even more clear, it is highly likely that Roel Rodriguez, Jr., Jason Rodriguez, Cal Harvey, Carlos Hughes, and Jose Robert Galvan (both of whom are asserting personal injury claims and represented by attorney Chad Matthews who has not yet filed suit), Antonio (Tony) Salazar (who is represented by attorney) , Kenny Havens, Abhi Banerjee, Aaron Klausmeier, and Trey Means (who is apparently seeking representation) will be called to testify in all five of the underlying cases, as they are all key witnesses to the state of the well-site immediately before the flash fire and of the flash fire itself. Moreover, while the medical providers that treated Roel Rodriguez Sr., Roel Rodriguez Jr, John Cuevas, Armando Gonzales, and Cal Harvey will not necessarily be identical, there will necessarily be some overlap especially considering that all five injured workers were treated at the Brooke Army Medical Center Hospital in its Burn Intensive Care Unit, which upon information and belief, has  a relatively small number of doctors, burn surgeon specialists, burn care nurses, and burn care physical therapist assigned to treat and care for severely burned patients, and because of the specialized nature of the I.C.U. and burn care unit, it is highly likely that some, if not all, of the plaintiffs' treating medical providers overlap.

Further, the results of the investigation to date have identified a number of pieces of equipment utilized at the well-site that need further inspection including an extension cord, hydraulic pump, light-plant, packer, manifold, choke, piping, open top tank with gas buster, and safety trailer package. A single pretrial court operating under Rule 13 is perfectly situated to preside over the preservation, inspection, testing, both non-destructive and destructive, of equipment and other evidence that is key to determining cause and liability issues in this tragic fire incident, thereby conserving party resources, eliminating duplicative discovery, avoiding potential spoliation disputes, serving the convenience of the parties and witnesses, and promoting the just and efficient conduct of this litigation. A draft proposed protocol for inspection and non-destructive testing has been circulated but no consensus has been reached. *See* Exhibit B. While some of the equipment is in Denton Texas, the packer is in Pawnee, Bee County, Texas, and the safety trailer is in Jourdanton, Atascosa County, Texas, and the piping, manifold, choke, and open-top tank with gas buster is in Alice, Jim Wells County, Texas.

Moreover, unlike Valero's assertion in *Valero I* that the only witnesses who would be subject to multiple demands would be its own corporate witnesses, here, Pioneer has identified witnesses beyond its own corporate witnesses who would be inconvenienced. *See Ad Valorem* (*Valero I*), 216 S.W.3d at 86.

21

Further still, as evidenced by the voluminous written discovery already being sought by plaintiffs,[11] discovery for these five underlying and related cases "will be time consuming and costly to both the parties and witnesses, and both the discovery requests and responses are likely to be identical in each of the four cases." *Delta Lloyds*, 339 S.W.3d at 389; *see also Continental Airlines*, 387 S.W.3d at 930 (concluding consolidation would promote efficiency in light of already submitted 245 requests for production and 49 interrogatories).

Finally, the fact that the Cuevas/Gonzalez Respondents felt compelled to draft a five-page "Discovery Sharing Plan" is definitive proof that having a consolidated pretrial proceedings for the underlying cases would conserve party resources, eliminate duplicative discovery, serve the convenience of the parties and witnesses, and promote the just and efficient handling of these cases. And while the Rule 11 "Discovery Sharing Plan" touted by counsel for Cuevas/Gonzalez Respondents is a good, albeit incomplete, start towards a case management plan contemplated by Rule 13.6(c), all of the parties to the underlying lawsuits have not, and it is unlikely that they will, agree to the limited Plaintiffs "Discovery Sharing Plan." Further, the "Discovery Sharing Plan" does not and cannot address potential docket control order conflicts among all the underlying cases, or potential

---

[11] To date from the various Plaintiffs, Pioneer has received almost 200 requests for production, 40 interrogatories, 22 requests for admissions, and multiple requests for disclosure. Additionally, multiple inspections have been requested and inspections and testing need to be conducted of the light tower, hydraulic pump, extension cord, packer, piping manifold, choke, gas buster or separator, open top tank, and safety trailer.

conflicting hearing dates, or the other mandates set forth in Rule 13.6(c) as discussed above in Section II. These are conflicts that only a pretrial MDL court can address in a comprehensive fashion. Moreover, if anyone violates the proposed "Discovery Sharing Plan," the other parties will be left without recourse. Whereas if a party violates the orders of the pretrial court, including a comprehensive case management plan, the other parties will have known and immediate ways to ensure compliance before one pretrial judge.

## V.    Pioneer did not request transfer to a particular county

Contrary to the Rodriguez Respondents' assertion,[12] Pioneer did not request transfer to a particular county. Rather, Pioneer simply wanted to apprise the Court of the residence and location of Plaintiffs, potential witnesses, and counsel so the Court would be further informed in making its decision regarding the convenience of the parties and witnesses. Since filing the Motion for Transfer, Plaintiffs have added BEA/KLX (principal office located in Harris County, Texas and attorney of record located in Dallas County, Texas); Energy Leasing (principal office located in Dewitt County, Texas and attorney of record located in Dallas County, Texas); Energes (principal office located in Harris County, Texas and attorney of record

---

[12] *See* Respondents' Response to Pioneer Natural Resources Company and Pioneer Natural Resources USA, Inc.'s Motion for Transfer, p. 12.

located in Dallas County, Texas); Allied Wireline (principal office located in Harris County, Texas and attorney of record located in Harris County, Texas).

## CONCLUSION

For all of these reasons, Pioneer and the other potential Defendants request that the Panel grant this motion and transfer related cases in Appendix A, attached to its Motion to Transfer, along with all tag-along cases, to an appropriate pre-trial judge for consolidated and coordinated pre-trial proceedings. Pioneer further respectfully requests a stay of all trial court proceedings until a ruling is made by the MDL Panel. Pioneer requests such other and further relief to which it may show itself justly entitled.

Respectfully submitted,

**TEKELL, BOOK, ALLEN & MORRIS, L.L.P.**

Michael P. Morris
State Bar No. 14495800
mmorris@tekellbook.com
Kenneth Tekell, Sr.
State Bar No. 19764000
ktekell@tekellbook.com
1221 McKinney Street, Suite 4300
Houston, Texas 77010
Telephone: 713.222.9542
Facsimile: 713.655.7727

24

**NAMAN, HOWELL, SMITH & LEE, PLLC**
David L. Ortega
State Bar No. 0079377
dortega@namanhowell.com
10001 Reunion Place, Suite 600
San Antonio, Texas 78216
Telephone:  210.731.6353
Facsimile:  210.785.2953

**ATTORNEYS FOR PIONEER NATURAL
RESOURCES COMPANY AND PIONEER
NATURAL RESOURCES USA, INC.**

# CERTIFICATE OF SERVICE

I certify that on January 30, 2015, true and correct copies of this Motion for Transfer were provided to the following, as required by Texas Rule of Judicial Administration Rule 13.3.(f) and (h).

Honorable Blake A. Hawthorne                                    *Via eFile*
Clerk, Multidistrict Litigation Panel
201 West 14th Street, Room 104
Austin, Texas 78701
blake.hawthorne@courts.state.tx.us
Claudia.jenks@courts.state.tx.us

Honorable David Peeples
Fourth Administrative Judicial Region
Bexar County Courthouse
100 Dolorosa
San Antonio, Texas 78205

Honorable Catherine Stone
Justice, Fourth Court of Appeals
300 Dolorosa, Suite 3200
San Antonio, Texas 78205

Honorable Ann McClure
Justice, Eighth Court of Appeals
500 East San Antonio, Room 1203
El Paso, Texas 79901

Honorable Elizabeth Lang-Miers
Justice, Fifth Court of Appeals
George L. Allen, Sr. courts Bldg.
600 Commerce Street, Second Floor
Dallas, Texas 75202

Honorable Harvey G. Brown
Justice, First Court of Appeals
301 Fannin Street
Houston, Texas 77002

26

Robert C. Hilliard  *Via Efile*
Rudy Gonzales, Jr.
Catherine D. Tobin
John B. Martinez
Hilliard Munoz Gonzales LLP
719 S. Shoreline Blvd., Suite 500
Corpus Christi, TX 78401
bobh@hmglawfirm.com
rudyg@hmglawfirm.com
catherine@hmglawfirm.com
john@hmglawfirm.com
*Plaintiffs' Attorney for: John Cuevas*
*and Honey Cuevas, Ind. And as Next*
*Friend of Kinsley Jo Cuevas and*
*John Weston Cuevas, Minors v.*
*Pioneer Natural Resources*
*Company, CC Forbes, LLC, Cornell*
*Solutions, LLC, EOG Resources,*
*Inc., and appointed by order Rule*
*13.3(h) to serve documents on parties*
*not aligned with Pioneer*

Collen A. Clark  *Via Efile*
The Clark Firm
2911 Turtle Creek Blvd., Suite 1400
Dallas, Texas 75219
cclark@clarklawgroup.com

Omar G. Alvarez
O.G. Alvarez & Associates, P.C.
10001 Reunion Place, Suite 600
San Antonio, Texas 78216
ogalvarez@oglavarezlaw.com
*Plaintiffs' Attorneys for: Sylvia*
*Rodriguez, Ind. And on behalf of*
*Roel Rodriguez, Sr. and Roel*
*Rodriguez, Jr., Roel Rodriguez, Sr.,*
*Roel Rodriguez, Jr., Sylvia*
*Rodriguez, as Next Friend of*
*Rolando Rodriguez, a Minor, Sarita*
*Rodriguez, a Minor, Anselma*
*Rodriguez, a Minor,*
*Stephanie Rodriguez and Jason*
*Rodriguez*

MIKE MORRIS

Exhibit "A"

# DEPUTY SECRETARY of STATE
# COBY SHORTER, III

UCC | Business Organizations | Trademarks | Notary | Account | Help/Fees | Briefcase | Logout

### BUSINESS ORGANIZATIONS INQUIRY - VIEW ENTITY

| | | | |
|---|---|---|---|
| **Filing Number:** | 800992040 | **Entity Type:** | Domestic Limited Liability Company (LLC) |
| **Original Date of Filing:** | June 13, 2008 | **Entity Status:** | In existence |
| **Formation Date:** | N/A | | |
| **Tax ID:** | 12628492998 | **FEIN:** | |
| **Duration:** | Perpetual | | |
| **Name:** | CSOS, LLC | | |
| **Address:** | PO BOX 6105 | | |
| | MCALLEN, TX 78502 USA | | |

REGISTERED AGENT    FILING HISTORY    NAMES    MANAGEMENT    ASSUMED NAMES    ASSOCIATED ENTITIES

| Name | Name Status | Name Type | Name Inactive Date | Consent Filing # |
|---|---|---|---|---|
| Cornell Solutions, L.L.C. | Inactive | Legal | September 10, 2008 | 0 |
| Cornell Solutions, L.L.C. | Prior | Legal | June 19, 2014 | 0 |
| CSOS, LLC | In use | Legal | | |

Order     Return to Search

---

Instructions:
● To place an order for additional information about a filing press the 'Order' button.

| Form 424 |  | Filed in the Office of the |
|---|---|---|
| Secretary of State<br>P.O. Box 13697<br>Austin, TX 78711-3697<br>FAX: 512/463-5709<br><br>Filing Fee: See instructions | **Certificate<br>of Amendment** | Secretary of State of Texas<br>Filing #: 800992040 06/19/2014<br>Document #: 549807670003<br>Image Generated Electronically<br>for Web Filing |

## Entity Information

The filing entity is a: **Domestic Limited Liability Company (LLC)**

The name of the filing entity is: **Cornell Solutions, L.L.C.**

The file number issued to the filing entity by the secretary of state is: **800992040**

## Amendment to Name

The amendment changes the formation document of the filing entity to change the article or provision that names the entity. The article or provision is amended to read as follows:

The name of the filing entity is:

**CSOS, LLC**

A letter of consent, if applicable, is attached.

## Statement of Approval

The amendment has been approved in the manner required by the Texas Business Organizations Code and by the governing documents of the entity.

## Effectiveness of Filing

☑ A. This document becomes effective when the document is filed by the secretary of state.

☐ B. This document becomes effective at a later date, which is not more than ninety (90) days from the date of its filing by the secretary of state. The delayed effective date is:

## Execution

The undersigned signs this document subject to the penalties imposed by law for the submission of a materially false or fraudulent instrument and declares under penalty of perjury that the undersigned is authorized under the Texas Business Organizations Code to execute the filing instrument.

Date: **June 19, 2014**      **Carlos I. Garza**

Signature of authorized person

FILING OFFICE COPY

Exhibit "B"

# DRAFT OF PROPOSED PROTOCOL

A number of items were collected at the Washburn Ranch well-site in question for preservation due to the inclement weather conditions which items are currently in the custody of Mark Goodson Engineering, 1500 Spencer Road, Denton, Texas 76205. Those items include:

1.  **Southwire extension cord;**
2.  **Hytorc hydraulic pump;**
3.  **Allmand light-plant;**
4.  **Other items including hard hats, safety glasses, cigarette butts, partially melted buckets, a complete list of which will be made available.**

Mark Goodson of Mark Goodson Engineering has suggested the following protocol to govern and guide a non-destructive examination of the items listed below:

1.  **Southwire extension cord;**
    Photograph
    Verify H N G continuity, polarity
    FTIR on jacketing
    Dielectric leakage at 120 volts, 500 volts
    Reflect back outer jacketing, check for thermal insulation damage to inner insulation on the H N and G conductors
    Examine the male blades for evidence of arcing / overcurrent
    Xray both male and female ends

2.  **Hytorc hydraulic pump;**
    Measure resistances with DMM on line cord, switches OFF and ON. All three combinations of HNG
    Examine pump motor for damage
    Examine bottom of pump chassis for arc damage
    Retain sample of hydraulic oil for analysis
    Xray switch control box
    Use widow maker, float ground of unit. Power on at 120 VAC, measure V, I, PF, VA, VAR W
    With a 10 K load resistor, apply 120 VAC, power pump ON. Place load resistor between chassis ground on pump and ground of electrical power source. Measure any leakage current across 10K load resistor.
    Repeat above, with 1K resistor swapped for 10 K.
    Repeat above, using 500 ohm load resistor rather than 1 k
    If there is a leakage current problem, decide as to whether to further isolate problem – IE, to locate source of leakage path(s)
    Decide as to whether or not to Hi Pot or megger the windings, switches
    Determine whether or not unit should be torn down

**3.**     **Allmand light-plant;**
Photograph unit
Denote positions of all switches, breakers
Note fuel level
Note settings on all controls
Fire up unit, measure output F and V unloaded out of GFI
Let idle (30 minutes), measure exhaust gas temperature, temperature on exhaust manifold
Using FLIR, determine hot spot(s) on unit, measure temperatures
Power off unit
Check wiring on thermal CB (20 ampere) , GFI
Remove GFI and breaker
Xray ( and if necessary, CT )both breaker and GFI
Test GFI using Agilent 6813A as source – use TRIP button
Develop timing curve (Fault current v trip time) for GFI using UL 943 criterion
Verify operation of N-G fault detection on GFI
Apply 40 A to CB – measure trip time

**4.**     **Other items requiring an agreed inspection protocol may include:**

(a)     Weatherford Packer;
(b)     C.C. Forbes manifold, choke, piping and open top tank with gas buster; and
(c)     Energes Safety Trailer package.

Further, any inspection or examination of the items listed above, shall be non-destructive and consist of visual, tactile, photographic, video, and x-ray examinations only, unless (a) a prior written agreement is signed by counsel for all parties specifically allowing for the proposed specified destructive testing or (b) a prior order is entered by a court of competent jurisdiction expressly authorizing the specific proposed destructive testing obtained after the filing of a motion and a properly noticed hearing.

All digital data acquired – SEM, microscope, FLIR, FTIR, CT scans will be made available to all participants.

The following equipment is available at Mark Goodson Engineering:

IRT 130 KV Xray, MF, RT
Nikon 225 KV Xray, MF, RT, CT Scan
Vitrek 944i dielectric tester
Megger, 500 volt
FTIR, Nicolet 6700
Hitachi S-3000 SEM w EDX
Leica MZ7.5 stereoscope
AGEMA / FLIR thermal camera
Agilent / HP 6813A power supply
O'scope

2